# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0273-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

S.P.,

     Defendant-Appellant.

_____

Submitted December 19, 2019 – Decided February 11, 2020

Before Judges Nugent and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 09-08-1483.

Joseph E. Krakora, Public Defender, attorney for appellant (Amira Rahman Scurato, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant, S.P., appeals from an order that denied his third petition for post-conviction relief (PCR). He argues the following points:

POINT I

THE PCR COURT ERRED IN NOT HOLDING AN EVIDENTIARY HEARING AND IN FINDING THAT THE FAILURE TO CALL TWO SPECIFIC WITNESSES WAS NOT INEFFECTIVE ASSISTANCE OF COUNSEL.

A. The PCR Court Erred in Denying an Evidentiary Hearing on This PCR Petition When Defendant Himself Brought Forth Evidence that PCR Counsel Assigned to His First PCR Failed to Investigate.

B. Trial Counsel was Clearly Ineffective for Failing to Interview and Present Two Specific Witnesses.

For the reasons that follow, we affirm.

A jury convicted defendant of two counts each of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a), second-degree sexual assault, N.J.S.A. 2C:14-2(b), and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). For these offenses, a judge sentenced defendant to an aggregate thirty-year prison term subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2; parole supervision for life (PSL), N.J.S.A. 2C:43-6.4; and the registration requirements of Megan's Law, N.J.S.A. 2C:7-2. The victims were

A-0273-18T4

defendant's minor daughters, C.A. and J.P.  Their trial testimony provides the

context for defendant's third PCR petition and this appeal.  We summarized their

testimony in our opinion rejecting defendant's direct appeal:

> C.A. testified that defendant placed his penis into her vagina on approximately six or seven occasions when she was ten- or eleven-years-old.  She explained to the jury that on the first occasion they played hide-and-seek, he took her into his bedroom, and then defendant removed her pants and underwear and performed the act.  She testified that "he got on top of me and started humping me."  The other incidents occurred in the home too.  She stated at trial that defendant directed her not to tell anyone and offered her money to keep the sexual abuse a secret.  C.A. testified, without objection, that defendant drank beer when he performed some of the acts.
>
> . . . .
>
> J.P. testified that defendant inserted his penis into her vagina when she was seven-years-old and repeated this conduct three times per week until she was approximately ten- or eleven-years-old.  J.P. explained that most of the acts occurred in her parents' bedroom, where defendant directed her to remove her pants and underwear, but that defendant also performed these acts in a bathroom at a construction site where he had worked.  J.P. also provided to the jury details of the sexual abuse.  She testified that he used a condom and "moved back and forth," which caused her physical pain.  J.P. told a friend from school about the sexual abuse during the time frame when defendant was performing the acts; J.P. informed her mother about what had occurred after her mother learned that defendant had been sexually assaulting C.A.

[State v. S.P., No. A-3331-10 (App. Div. Oct. 4, 2013) (slip op. at 2-4), certif. denied, 217 N.J. 588 (2014).]

Defendant denied his daughters' allegations. He testified he worked six days a week as a landscaper and each working day he worked approximately twelve and one-half hours, from 6:30 a.m. to 7:00 p.m. Id. at 7. He claimed he never missed work as a result of being hung over and rarely missed work for any other reason. Ibid. In addition, he testified he did not spend time alone with the victims and never played hide-and-seek with them. Ibid. Defendant called five character witnesses, who testified that he was truthful, respectful, and honest. Ibid. The jury found the victims credible and convicted defendant of the crimes we have enumerated above.

In June 2014, defendant filed his first PCR petition, which the trial court denied without an evidentiary hearing. Defendant alleged his trial counsel "failed to adequately prepare. Counsel failed to call witnesses." The trial court found defendant's petition was "factually unsupported, R. 3:22-8." State v. S.P., No. A-1886-14 (App. Div. July 7, 2016) (slip op. at 2), certif. denied, 229 N.J. 160 (2017). On appeal, defendant argued:

> POINT I
>
> THE PCR COURT ERRED IN DENYING AN EVIDENTIARY HEARING BECAUSE THE DEFENDANT HAD ESTABLISHED A

4

REASONABLE LIKELIHOOD THAT HIS CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL WOULD ULTIMATELY SUCCEED ON THE MERITS.

> A. Trial Counsel was Ineffective by Failing to Conduct an Investigation Prior to Trial and, as a Result, Failed to Call Favorable Witnesses at Trial.
>
> B. The PCR Court Should have Conducted an Evidentiary Hearing on the Defendant's Claims.

We affirmed the trial court's denial of defendant's first PCR petition. Ibid. We noted defendant had "failed to specifically identify counsel's acts or omissions evincing a lack of preparation or supply statements from witnesses whose testimony would have aided his defense." Id. at 4.

Defendant filed a second PCR petition, which the trial court dismissed on January 26, 2015, because defendant's appeal from his first PCR petition was pending. R. 3:22-6A(2). Defendant filed his third PCR petition—the subject of this appeal—on April 5, 2017. He alleged his trial counsel was ineffective because he failed to investigate two witnesses and present their testimony at trial. This time, he included certifications of the witnesses with his petition.

The first witness (the Construction Site Owner) co-owned the property that defendant's daughter, J.P., referred to in her trial testimony as the

A-0273-18T4

"construction site" where defendant had sexually assaulted her in a bathroom. The Construction Site Owner explained that two houses were located on the site. Defendant often worked on the grounds on weekends, setting bricks and stone walls, and working on patios and retaining walls. He often brought his daughters with him. They played with her children.

The Construction Site Owner and her husband lived in the larger house. Her parents lived in the smaller house—where the sexual assaults allegedly occurred in 2003 and 2004—from 2002 to 2008. Not only did her parents live in the smaller house where they were present most days and weekends, but there were cameras on the property used for security and surveillance. According to the Construction Site Owner, "[i]t is simply not possible [to commit such an assault] from the layout of the house, and go unnoticed." Moreover, she stated the children never showed signs of having been traumatized, such as sadness or depression; rather, they were happy, cheerful, playing with each other and with the dog.

The second witness, defendant's co-worker from 1995 to 2009 (the Co-worker), confirmed he and defendant did a substantial amount of work on weekends at the property defendant's daughter had referred to as the construction site. The Co-worker confirmed the site included two homes, the larger occupied

6

by the Construction Site Owner, her husband, and their children, the smaller occupied by her parents, who passed away in 2007. These parents were at the smaller house "mostly every weekend." According to the Co-worker, "[n]one of the workers had unrestricted access to [the smaller] house, and would therefore be noticed going in[.]" The Co-worker further averred he "was present when any work was being done on that house between 2002 and 2004, and never saw any of [defendant's] children enter the smaller house[.]"

The Co-worker "never saw any signs of abuse on [defendant's] children, and remember[ed] his daughter [J.P.] always playing with the [Construction Site Owner's] children and their dog. [J.P.] never looked down or depressed, or showed any type of behavior that would make you think that she was sad or that she had been abused." Rather, according to the Co-worker, J.P. was always happy and playing with the other children.

The Co-worker's observations of J.P. were not limited to her activities at the construction site. He and defendant shared family activities, such as birthday parties. He never witnessed any type of behavior in defendant's children at such events that would indicate something was wrong, nor did he ever observe defendant demonstrate any behavior that would lead him to believe defendant was a threat to the children.

Because defendant alleged in his third PCR petition ineffective assistance of both his trial counsel and his previous PCR counsel, the trial court assigned counsel to assist him. Assigned counsel supplemented defendant's petition and submitted a letter-brief to the court. Counsel argued trial counsel had been ineffective for failing to interview the "exculpatory witnesses" who had provided the certifications. He also argued defendant was entitled to an evidentiary hearing because defendant's previous PCR counsel had been ineffective for failing to properly investigate defendant's claims and obtain statements from the witnesses who had not been presented at trial. He argued that previous appellate counsel had also been ineffective and that his petition was not time barred.

The trial court denied defendant's petition in a written opinion. The court first considered—and rejected—defendant's argument his first PCR counsel was ineffective. The court found PCR counsel made appropriate arguments and incorporated by reference other arguments defendant had raised in his petition. Concerning PCR counsel's failure to call witnesses, the court noted defendant had raised his trial counsel's failure to call witnesses in his pro se brief and PCR counsel incorporated the argument by reference in his own brief. Thus, the judge who heard the first PCR petition had the opportunity to consider the arguments.

A-0273-18T4

Noting that case law does not mandate PCR counsel articulate every argument raised by a defendant but permits counsel to incorporate arguments by reference, and reiterating that PCR counsel incorporated defendant's argument by reference, the court concluded PCR counsel had effectively represented defendant.

Turning to defendant's next argument, the court rejected the claims that trial counsel had failed to properly investigate and review the case and had committed errors that cumulatively denied defendant effective assistance. Specifically, defendant alleged trial counsel had failed to investigate and present at trial the Construction Site Owner and the Co-worker. The court noted defendant had raised the same claims in his first PCR petition and the judge that heard the first PCR petition had rejected these claims. Because the claims had been heard and rejected previously, and because defendant was not alleging that this was new evidence, the court rejected defendant's arguments.

The court did not stop there. Rather, the court noted that even if the alleged exculpatory testimony from the Construction Site Owner and the Co-worker were considered new evidence, "a complete analysis of the testimony and its use, or lack thereof, does not warrant a finding of ineffective counsel." The court determined the proffered evidence did not place the integrity of

9

defendant's conviction in doubt. The court noted defendant failed to provide "any explanation or assertion that prior counsel—trial, appellate, or PCR—were informed of the two witnesses." Consequently, the court was unable to conclude whether the evidence was available at trial or not. The court rejected the argument because defendant had not demonstrated the proffered testimony was more than merely cumulative, impeaching or contradictory; nor had he shown it was discovered after trial and would probably change the jury's verdict.

Concluding defendant had failed to establish a prima facie case of ineffective assistance, the court denied the PCR petition. This appeal followed.

To establish a PCR claim that trial counsel was constitutionally ineffective, a defendant must prove two elements: first, that "counsel's performance was deficient[,]" that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"[;] second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694 (1984); accord State v. Fritz, 105 N.J. 42, 58 (1987).

To prove the first element, a defendant must "overcome a strong presumption that counsel exercised reasonable professional judgment and sound

trial strategy in fulfilling his responsibilities." State v. Nash, 212 N.J. 518, 542 (2013) (citation omitted). To prove the second element, a defendant must demonstrate "how specific errors of counsel undermined the reliability of the finding of guilt." United States v. Cronic, 466 U.S. 648, 659 n.26 (1984).

"A petitioner must establish the right to [post-conviction] relief by a preponderance of the credible evidence." State v. Preciose, 129 N.J. 451, 459 (1992). "To sustain that burden, specific facts must be alleged and articulated" that would "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992). A petitioner must do more than make bald assertions that he was denied effective assistance of counsel; he must allege specific facts sufficient to demonstrate counsel's alleged substandard performance. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). For example, "when a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Ibid. This standard applies as well to a defendant's claim of ineffective assistance of appellate counsel. State v. Gaither, 396 N.J. Super. 508, 513 (App. Div. 2007).

A-0273-18T4

Whether a PCR hearing on an ineffective-assistance-of-counsel petition is necessary is a matter within the court's discretion. See Preciose, 129 N.J. at 462; see also R. 3:22-10(b) ("A defendant shall be entitled to an evidentiary hearing only upon the establishment of a prima facie case in support of post-conviction relief, a determination by the court that there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief.").

Here, we agree with the trial court that defendant failed to establish a prima facie case that his trial counsel was ineffective. Specifically, a study of the record confirms the trial court's observation that defendant proffered no competent evidence trial counsel was made aware of either the names of the Construction Site Owner and Co-worker or that they could offer potentially exculpatory evidence, assuming their statements can be so construed. In fact, in defendant's PCR petition, he refers to the statements of these witnesses as "newly discovered evidence."

Had defendant alleged he had provided trial counsel with the names of the Construction Site Owner and Co-worker, or that they could provide exculpatory testimony, he might have been entitled to an evidentiary hearing. Indisputably, "counsel has a duty to make 'reasonable investigations or to make a reasonable

12

decision that makes particular investigations unnecessary.' A failure to do so will render the lawyer's performance deficient." State v. Chew, 179 N.J. 186, 205 (2004) (quoting State v. Savage, 120 N.J. 594, 617-18 (1990)). Having failed to present competent evidence trial counsel was made aware of the Construction Site Owner and Co-worker, defendant has failed to present a prima facie case that his trial counsel was ineffective for not investigating them and presenting their testimony at trial. Preciose, 129 N.J. at 459.

In view of our conclusion that defendant failed to establish a prima facie case that his trial counsel was ineffective, we cannot conclude his first PCR counsel was ineffective. To be sure, if defendant's first PCR counsel knew trial counsel was aware of but did not investigate two witnesses who could provide potentially exculpatory testimony, then first PCR counsel was obligated to obtain certifications or affidavits from the witnesses. Cummings, 321 N.J. Super. at 170. As we have discussed however, there is no evidence trial counsel was aware of these witnesses or, for that matter, any evidence they could have provided exculpatory testimony. Consequently, even if defendant could establish a prima facie case that his first PCR counsel violated Strickland's first prong by failing to conduct a reasonable investigation, he could not establish a prima facie case of the second Strickland prong, namely, there is a reasonable

probability that, but for the first PCR counsel's inadequate or non-existent investigation, the result of the first PCR proceeding would have been different. Strickland, 466 U.S. at 694.

Defendant's remaining arguments are without sufficient merit to warrant further discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0273-18T4